IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| SAHARO SACKO | CIVIL ACTION |
|---|---|
| v. | NO. 14-831 |
| UNIVERSITY OF PENNSYLVANIA, et al. | |

**MEMORANDUM RE: DEFENDANTS' MOTION TO DISMISS**

**Baylson, J.**                                                                                  **June 5, 2014**

Plaintiff brings constitutional and state law tort claims against the Trustees of the University of Pennsylvania, the University of Pennsylvania, the University of Pennsylvania Police Department, and University of Pennsylvania police officers related to the officers' alleged physical assault of Plaintiff.

### I.   FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff alleges the following facts in his complaint. On February 12, 2012 Plaintiff Saharo Sacko, a taxicab driver, was pulled over by University of Pennsylvania police officers for careless driving of his taxicab. While Plaintiff was pulled over, Defendants (Officers Sylvester and Does I-III) began to both verbally and physically abuse him. Plaintiff alleges Defendants took him out of the car, and physically assaulted him. After leaving the Defendants, Plaintiff went to Mercy Philadelphia Hospital emergency room and was diagnosed with a distal fibula avulsion fracture (a bone fracture where part of the bone breaks away from the main mass of bone) in addition to other bodily injuries.

On February 7, 2014 Plaintiff filed his original complaint against Trustees of the University of Pennsylvania, the University of Pennsylvania, the University of Pennsylvania Police Department (Institutional Defendants), University of Pennsylvania police officer, Badge

1

158, and three unidentified police officers, John Does I-III (ECF 1).  The Trustees of the University of Pennsylvania filed a partial answer, along with affirmative defenses on March 11, 2011(ECF 11). The Trustees of the University of Pennsylvania also filed a motion to dismiss Plaintiff's complaint the same day (ECF 12).

On March 19, 2014 Plaintiff then filed a motion to amend his Complaint to substitute "University of Pennsylvania Police Officer Badge 158" with "Michael Sylvester a University of Pennsylvania Police Officer" as a named Defendant (ECF 17). Institutional Defendants then filed a motion to dismiss the Plaintiff's amended complaint on April 4, 2014 (ECF 19). Institutional Defendants then provided a partial answer to Plaintiff's first complaint on April 4, 2014 (ECF 20). Plaintiff's motion to amend his complaint was granted on April 10, 2014 (ECF 22) and therefore was amended (ECF 23). The University of Pennsylvania and Sylvester then filed a partial answer to the amended complaint on April 22, 2014 (ECF 26).

All Defendants filed a motion to dismiss Counts I and II of Plaintiff's amended complaint on April 22, 2014 (ECF 27), for failure to state a claim for municipal liability or violation of substantive due process rights which is the subject of this Opinion.

Plaintiff brings four claims. Count I is a Section 1983 claim for unlawful seizure and excessive force under the Fourth Amendment against all Defendants. Count II is a Section 1983 claim for deprivation of substantive due process rights under the Fourteenth Amendment against all Defendants. Count III is a state law claim for assault and battery against Officer Sylvester. Count IV is a state law claim for intentional infliction of emotional distress against all Defendants.

Defendants move to dismiss Counts I and II of Plaintiff's First Amended Complaint for failure to state a claim for municipal liability or violation of substantive due process rights.

## II. PARTIES' ARGUMENTS

### 1. Monell Claim

Institutional Defendants contend that Plaintiff did not allege any specific policy or custom that led to his constitutional injuries. Plaintiff responds that he has made factual allegations that show the Defendants failed to train university police officers, which caused the injuries inflicted on Plaintiff.

### 2. Substantive Due Process Claim

All Defendants contend Plaintiff cannot state a claim under the Fourteenth Amendment for violation of substantive due process because the Fourth Amendment's "objective reasonableness" standard is available. Plaintiff responds that Defendants violated his substantive due process right to liberty protected under the Fourteenth Amendment when they physically assaulted him.

## III. LEGAL STANDARD

When deciding a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the court may look only to the facts alleged in the complaint and its attachments. Jordan v. Fox, Rothschild, O'Brien & Frankel, 20 F.3d 1250, 1261 (3d Cir. 1994). The court must accept as true all well-pleaded allegations in the complaint and view them in the light most favorable to the plaintiff. Angelastro v. Prudential-Bache Sec., Inc., 764 F.2d 939, 944 (3d Cir. 1985).

A valid complaint requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Iqbal clarified that the

Court's decision in <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007) "expounded the pleading standard for 'all civil actions.'"  556 U.S. at 684.

**A. State Actor**

To be liable under Section 1983, a defendant must be acting under color of state law. Although the University of Pennsylvania is a private institution, its police officers are all "sworn municipal police officers certified through the Commonwealth of Pennsylvania Municipal Police Officers Training and Education Commission."  <u>Fleck v. Trustees of Univ. of Pennsylvania</u>, No. 12-3765, 2014 WL 460652, at *8 (E.D. Pa. Feb. 5, 2014) (quoting http://www.publicsafety.upenn.edu/UPPD).  Accordingly, Defendants are state actors for the purposes of Section 1983.

**B. <u>Monell</u> Claim**

The University of Pennsylvania, Trustees of the University of Pennsylvania and the University of Pennsylvania Police Department (Institutional Defendants) contend they cannot be liable for the alleged conduct of their officers because Plaintiff has not alleged any facts showing an official policy or practice, or a lack of training.   Plaintiff responds that the Complaint alleges Defendants acted with deliberate indifference in failing to adequately train University of Pennsylvania police officers, which resulted in Plaintiff's injuries.

<u>1. Legal Standard</u>

A municipality cannot be liable for the actions of their employees under the theory of respondeat superior, but can be liable for constitutional violations when they are the result of an official policy, custom or failure to train.  <u>Monell v. City of New York City Dep't of Social Servs.</u>, 436 U.S. 658 (1978). A policy is a "statement, ordinance, regulation, or decision officially adopted and promulgated by [the governing] body's officers." <u>Id.</u> at 690. A custom is

an act "that has not been formally approved by an appropriate decision-maker, but that is so widespread as to have the force of law." Natale v. Camden Cnty. Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003). A plaintiff must show the policy was the cause of the constitutional deprivation. Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown, 520 U.S. 397, 404 (1997). It is insufficient to show that one particular officer was unsatisfactorily trained, since "the officer's shortcomings may have resulted from factors other than a faulty training program." City of Canton, Ohio v. Harris, 489 U.S. 378, 390-91 (1989). It is also insufficient to merely show a constitutional deprivation "could have been avoided if an officer had had better or more training," or that a training program was negligently administered. Id. at 391.

The Supreme Court has held "the inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." City of Canton, 489 U.S. at 388 (reversing a jury verdict for the plaintiff). A failure to train constitutes a policy when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." Id. A plaintiff can also show policymakers were deliberately indifferent when "policymakers were aware of similar unlawful conduct in the past, but failed to take precautions against future violations, and that this failure, at least in part, led to their injury." Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990) (reversing the grant of a directed verdict for the municipality); see also Simmons v. City of Philadelphia, 947 F.2d 1042, 1064 (3d Cir. 1991) (requiring the plaintiffs to show that the "responsible policymakers were aware of the number of suicides in City lockups and of the alternatives for preventing them, but

either deliberately chose not to pursue these alternatives or acquiesced in a long-standing policy or custom of inaction in this regard").

In Simmons v. City of Philadelphia a plaintiff brought a claim against the city for failure to train employees on suicide prevention measures after her son hung himself in a Philadelphia police station after he was arrested for public intoxication. Simmons v. City of Philadelphia, 947 F.2d 1042, 1049 (3d Cir. 1991) (affirming the district court's denial of judgment notwithstanding the jury verdict in favor of the plaintiff). The Third Circuit affirmed a denial of judgment not withstanding the verdict because the jury was presented with evidence that 200 people committed suicide while in temporary police detention, and this evidence demonstrated the city's knowledge of the constitutional deprivation. Simmons, 947 F.2d at 1071. Moreover, the plaintiffs demonstrated the city was aware of suicide prevention measures, but chose not to implement them, which supported the jury's finding of deliberate indifference. Id.; see also, Beck v. City of Pittsburgh, 89 F.3d 966, 972 (3d Cir. 1996) (holding a pattern of five complaints against an officer for use of excessive force in the past five years was sufficient evidence of the city's knowledge and tacit approval of his use of excessive force); Bielevicz v. Dubinon, 915 F.2d 845, 851 (3d Cir. 1990) ("Indeed, it is logical to assume that continued official tolerance of repeated misconduct facilitates similar unlawful actions in the future.").

In Garey v. Borough of Quakertown this Court found a complaint adequately stated a Monell claim for failure to train where complaint alleged the municipality failed to train officers in how to place a prisoner in custody without the use of a Taser. No. 12-799, 2012 WL 3562450, at *6 (E.D. Pa. Aug. 20, 2012). The complaint alleged the officers involved had a history of abuse and police brutality in similar circumstances, and the municipality "negligently overlooked the inappropriate use of Tasers by its officers and failed to train them in the proper use of Tasers

on arrestees." Id. The alleged history of past violations demonstrated knowledge, and the municipality's failure to implement training on the use of Tasers supported a claim for deliberate indifference. Id.

Chief Judge Tucker of this Court granted summary judgment to defendants, Board of Trustees of Temple University, on a failure to train claim where there was no evidence the defendants were deliberately indifferent to a practice of subjecting students to unnecessary involuntary psychiatric exams. Marcavage v. Board of Trustees of Temple University, No. 00-5362, 2004 WL 1151835, at *10 (E.D. Pa. May 21, 2004) aff'd 232 F. App'x 79 (3d Cir. 2007). Although the plaintiff had introduced evidence that the university sought civil commitments several times each month during the school year, the plaintiff's only evidence that these civil commitments were a result of constitutional violations were the facts of his own case. Id. Chief Judge Tucker explained that a "[p]laintiff must come forth with evidence demonstrating unlawful use of the statute beyond his own alleged circumstance to sustain a Monell claim of this nature against the University." Id.

2. Analysis

Plaintiff alleges in his complaint, "The Defendants have with deliberate indifference, failed to be adequately trained and supervised concerning the proper provision of medical care to injured suspects," Pl's Complaint at ¶32, and "the Constitutional violations suffered by Plaintiff were the result of failure to properly train and supervise the officers with regard to the proper methods for handling citizens' use of modern technology to capture police activity while preserving those individuals' constitutionally protected rights." Pl's Complaint at ¶33. The complaint does not refer to any "modern technology" or how it was involved in this incident. The complaint also does not plead facts showing how the officers' failure to provide Plaintiff

with medical care resulted in his constitutional injuries.  It appears that the constitutional deprivation alleged may have occurred when officers illegally detained and physically assaulted Plaintiff.

The complaint does not allege any facts showing any policymakers at the University of Pennsylvania were aware of similar constitutional violations in the past or that that any similar incidents occurred in the past.  As the Supreme Court has held, it is insufficient to only allege that one officer's conduct was the result of a failure to train.  <u>City of Canton</u>, 489 U.S. at 391. To state a <u>Monell</u> claim, a complaint must allege facts showing policymakers were aware of similar constitutional violations in the past, or that it was blatantly obvious constitutional violations would result absent such training.  The complaint must also allege that despite this knowledge or obviousness, policymakers "failed to take precautions against future violations." <u>Bielevicz</u>, 915 F.2d at 851.  No such facts are pled in Plaintiff's complaint.  But Plaintiff should be granted leave to amend, since it may be possible to plead facts showing such knowledge and failure to act.

**C. Substantive due process**

Defendant contends excessive force cannot be the basis of a substantive due process claim because the more-specific-provision rule requires a constitutional claim that is covered by a specific constitutional provision to be analyzed under that standard, "not under the rubric of substantive due process." <u>United States v. Lanier</u>, 520 U.S. 259, 272 n. 7 (1997) (clarifying prior holding in <u>Graham v. Connor</u>, 490 U.S. 386 (1989)).

In <u>Graham v. Connor</u> the Supreme Court held that the Fourth Amendment "objective reasonableness" standard must be used to assess whether a police officer has used excessive

8

force, as opposed to the substantive due process analysis under the Fourteenth Amendment. 490 U.S. at 395. The Court held

> all claims that law enforcement officers have used excessive force—deadly or not—in the course of an arrest, investigatory stop, or other "seizure" of a free citizen should be analyzed under the Fourth Amendment and its "reasonableness" standard, rather than under a "substantive due process" approach. Because the Fourth Amendment provides an explicit textual source of constitutional protection against this sort of physically intrusive governmental conduct, that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing these claims.

Id.  The "objective reasonableness" standard takes into account "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." Id. at 397.

The Third Circuit applied Graham to find claims of excessive force must be analyzed under the Fourth Amendment.  Mellott v. Heemer, 161 F.3d 117, 121 (3d Cir. 1998) (reversing denial of summary judgment to the defendants and applying the Fourth Amendment standard instead of the substantive due process violation plaintiff alleged); see also Abraham v. Raso, 183 F.3d 279, 288 (3d Cir. 1999) (holding the plaintiff's claim for "excessive force in the course of an arrest is properly analyzed under the Fourth Amendment, not under substantive due process.").

Plaintiff cites to several cases that apply the substantive due process analysis in protecting citizens from arbitrary or irrationally harmful acts performed by government officials. However, none of these cases involved a police officer's use of force. See, e.g., Bello v. Walker, 840 F.2d 1124, 1126 (3d Cir. 1988) (considering a substantive due process claim for a municipality's failure to offer the plaintiff a building permit according to the required procedures); Parkway Garage Inc. v. City of Philadelphia, 5 F.3d 685, 689 (3d Cir. 1993) (considering constitutional violations stemming from a mayor's decision to shut down an

9

underground parking garage).  Neither of these cases apply directly to excessive force claims against police officers, as they focus more broadly on harmful government actions in general, which are not based on any explicit textual protections in the Constitution. Because excessive force claims are protected explicitly by the Fourth Amendment, Graham requires use of the more specific protection, namely the "objective reasonableness" standard set forth in the Fourth Amendment.

 Moreover, the broad substantive due process claims mentioned in Bello and Parkway have been undermined by cases such as County of Sacramento v. Lewis 523 U.S. 833, 834 (1998) (reversing the Ninth Circuit and affirming a grant of summary judgment to the defendant, holding that the defendant's actions must "shock the conscience" in order for the plaintiff to bring a substantive due process claim). The Third Circuit applied the "shocks the conscience" standard for a substantive due process claim in United Artists Theatre Circuit, Inc. v. Township of Warrington, PA, which involved a dispute over municipal land use. 316 F.3d 392, 394 (3d Cir. 2003). United Artists held that the "improper motive" standard applied in Bello was "no longer good law," instead requiring the defendant's actions "shock the conscience" in order for plaintiff to bring a substantive due process claim. Id. Thus, claims of substantive due process are severely limited to instances that demonstrate a "flagrant abuse of authority." Id. at 407.

 In this case, Plaintiff brings claims under both the Fourth Amendment and the Fourteenth Amendment for excessive force by police officers.  These factual allegations fall directly under the Fourth Amendment's explicit constitutional protections against unreasonable search and seizure.  In both Graham and Mellott the allegations of excessive police force were analyzed under the objective reasonableness standard because the Fourth Amendment specifically applied to their claims. Because the more-specific-provision rule applies to Plaintiff's claims, he may

only bring claims under the Fourth Amendment and cannot state a claim for violation of substantive due process under the Fourteenth Amendment.

### IV. CONCLUSION

Plaintiff's Monell claim will be dismissed, with leave to amend, as it is possible that Plaintiff could plead facts showing a failure to train.

Plaintiff's Fourteenth Amendment claim of substantive due process will be dismissed with prejudice because the more-specific-provision rule bars his claim for relief under the Fourteenth Amendment.

O:\CIVIL 14\14-831 sacko v. univ. penn\14-831.memo.mtd.docx